# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ex rel. **LATONIA MATHEWS,** | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  Case No.:  2:06-CV-1317-VEH ) |
| **DECATUR HOTELS, L.L.C.,** | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I.    INTRODUCTION

This False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* and unjust enrichment case was initiated on July 7, 2006. (Doc. #1). On January 12, 2007, the United States filed its Notice of Election to Decline Intervention. (Doc. #8). Accordingly, on January 18, 2007, the court unsealed the case, and ordered Relator Latonia Mathews ("Mathews") to serve the complaint upon Defendant Decatur Hotels, L.L.C. ("Decatur"). (Doc. #8).

Service on Decatur was perfected on March 6, 2007, and on April 24, 2007, Decatur filed its answer. (Docs. #11, #14). On April 30, 2008, Decatur filed a Motion for Summary Judgment. (Doc. #22). Mathews filed her opposition on May

28, 2008. (Docs. #25, #26). On June 9, 2008, Decatur filed its reply. (Doc. #27). The court has studied the parties' filings and concludes that Decatur's Motion for Summary Judgment is due to be granted.

## II.   STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted). "The substantive law applicable to the case determines which facts are material." *Fitzpatrick*, 2 F.3d at 1115 (citation omitted). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.   STATEMENT OF FACTS[1]

### A.   The Katrina and Rita Special Transient Accommodations Program

In August and September, 2005, Hurricanes Katrina and Rita devastated the

---

[1] Whenever the facts are in dispute, they are stated in the manner most favorable to the non-moving party. *See Fitzpatrick*, 2 F.3d at 1115. Therefore, these are the facts for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

Gulf Coast of the United States rendering thousands of people in need of assistance. Initially, the Red Cross attempted to provide lodging assistance to displaced persons. AF No. 1.1.[2] Thereafter, the Katrina and Rita Special Transient Accommodations Program (the "Program") was created to provide lodging assistance for persons from designated areas. AF No. 1.2. While the lodging funds were provided by the Red Cross and the Federal Emergency Management Agency ("FEMA"), the funds were actually administered and dispersed by Corporate Lodging Consultants, Inc. ("Corporate Lodging"), a Kansas corporation. AF No. 1.3.

Corporate Lodging's primary business is negotiating low-cost lodging for companies with a need for a large volume of reservations. AF No. 1.4. Alta Vista Hotel (the "Hotel") in Birmingham, Alabama participated in the Program as a

---

[2] The designation "AF" stands for admitted fact and indicates a fact offered by Decatur that Mathews has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case. Whenever Mathews has adequately disputed a fact offered by Decatur, the court has accepted Mathews's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Decatur's Statement of Facts as set forth in Doc. #22 and responded to by Mathews in Doc. #25. Similarly, the designation "AAF" stands for additional admitted fact and corresponds to Mathews's Statement of Undisputed Facts contained in Doc. #25 and responded to by Decatur in Doc. #27. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 1.4) would indicate the fourth sentence of paragraph 1 of Decatur's Statement of Facts is the subject of the court's citation to the record. Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

consequence of its long-standing relationship with Corporate Lodging, whereby the Hotel provided blocks of rooms for companies such as Greyhound and several railroads. AF No. 1.5. Decatur manages the Hotel and Crestmont, LLC owns it. AAF No. 3.[3]

At first, persons desiring to participate in the Program were required to provide identification showing their zip code. AF No. 2.1. Hotel employees checked each person's zip code against a list of eligible zip codes, and persons from approved zip codes were automatically entitled to have their stay reimbursed under the Program. AF No. 2.2. Later, persons desiring to participate in the Program were required to personally obtain a FEMA-issued identification number designating that person as approved to participate by FEMA. AF No. 2.3.

There were various ways for people to apply for participation in the Program, including by a 1-800 telephone number. AF No. 2.4. Hotel employees verified a person's eligibility to benefit from the Program by checking to see if the guest's zip code was on the approved list or if the guest had a FEMA-designated number. AF No. 2.5.

Participating hotels, including the Hotel, that housed eligible guests submitted billing statements to Corporate Lodging for review and payment. AF No. 3.1.

---

[3] *See also* Decatur's response to Mathews's AAF No. 3 at Doc. #25 at 3 ¶ 3.

Corporate Lodging and/or FEMA and/or Red Cross would then pay the participating hotels for approved lodging expenses. AF No. 3.2.[4]

The Hotel has 180 rooms. AF No. 4.1. At its peak, the Hotel housed approximately 60 guests at any one time under the Program. AF No. 4.2. With the possible exception of the Talledega race weekend, at no point during the duration of the Program was the Hotel completely booked. AF No. 4.3.

The room rate for Program guests was $120 per night, was unilaterally set by FEMA, and was non-negotiable. AF No. 4.4. The Hotel provided Program guests with refrigerators and microwaves for their rooms, complimentary van service, two meals per day, and free long distance in addition to regular guest services. AF No. 4.5.

### B.   Virginia College Students Long-Term Stay Program

At all relevant times, the Hotel had an arrangement with Virginia College to provide students enrolled there with a reduced rate for long-term stays. AF No. 5.1. More specifically, Virginia College students were charged a reduced monthly rate which equated to $16.50 per day. AF No. 5.2. While some students had Virginia College pay the Hotel from their student aid payments, others paid the Hotel directly

---

[4] The court notes that, while there appears to be some dispute over which entity was the actual payor (*i.e.*, Corporate Lodging, FEMA, or Red Cross) on any reimbursement to the Hotel, this factual disagreement is not a material one.

on their own.  AF No. 5.3.

The reduced rate entitled eligible students only to a room.  AF No. 5.4. Therefore, students under this special arrangement had to do their own laundry, clean their own rooms, and supply their own toiletries.  AF No. 5.5.

### C. Hotel Guests DeMarcus Hughes and Tempie Brooks

On August 4, 2005, Virginia College student DeMarcus Hughes ("Hughes") began staying at the Hotel at the reduced student rate.  AF No. 6.1.  Hughes's driver's license showed that he was from Moss Point, Mississippi, located along the Mississippi Gulf Coast and well within the hurricane-ravaged area.  AF No. 6.2.

On August 20, 2005 (only nine (9) days before Hurricane Katrina struck), Virginia College student Tempie Brooks ("Brooks") began staying at the Hotel at the reduced student rate.  AF No. 6.3.  Brooks's driver's license provided that she was from Mobile, Alabama, which was also situated well within the hurricane-affected area.  AF No. 6.4.  Both Hughes and Brooks were responsible for paying the Hotel directly for their rooms.  AF No. 6.5.

In mid-October 2005, Hughes and Brooks requested to participate in the Program based on their home zip codes.  AF No. 7.1.  Because Hughes's and Brooks's zip codes were on the approved list provided to the Hotel, they were both eligible for participation in the Program.  AF No. 7.2.  Thereafter, Hughes and Brooks

were relieved of paying for their own rooms, and the Hotel was reimbursed at the set rate of $120 per night for the approved duration of their eligibility under the Program. AF No. 7.3.  In addition, as they were no longer staying at the student rate, Hughes and Brooks were provided the full range of valuable complimentary services afforded to other Program guests.  AF No. 7.4.

### D. Hotel Guest Herbert Derkins and Family

On November 15, 2005, Herbert Derkins ("Derkins") and his family began staying at the Hotel under the Program.  AF No. 8.1.  Derkins's driver's license indicated that he was from Avondale, Louisiana, which was within the hurricane-affected area, and Mathews admits that the Derkins Family was approved by FEMA for their stay at the Hotel.  AF No. 8.2.

The Derkins remained at the Hotel until January 19, 2006, at which time they moved into a FEMA-provided apartment. AF No. 8.3.[5] While Derkins and his family began the process of leaving the Hotel in late December 2005, they did not complete their move until mid-January because the apartment designated for them lacked electricity and furniture.  AF No. 8.4.

---

[5] Mathews's efforts to dispute this fact are not availing as her later deposition testimony clarified that she has no knowledge of the Derkins Family's actual last day in the Hotel (Doc. #22 at Mathews Depo. at 36 ("No, I don't know the last day.")) and she could only clearly confirm that "in December 2005, they began" moving out of the Hotel.  (*Id.*).

Other witnesses who worked at the Hotel during this same period, General Manager Janet Wallace ("Wallace") and Assistant General Manager Heather Mines ("Mines"), testified that the Derkins continued to occupy their two (2) rooms the entire time they were registered at the Hotel. AF No. 8.5. Mathews acknowledges that the Derkins began moving to their new apartment around Christmas 2005, and admits that she does not know when their last day at the Hotel was. *See* n.5, *supra*.

### E. Hotel Guest Irvin Catchings

On October 30, 2005, Irvin Catchings ("Catchings") began staying at the Hotel under the Program. AF No. 9.1. While Catchings's driver's license was issued in Iowa, he applied for and received a FEMA-issued number 9213874511603. AF No. 9.2. Wallace and Mines both testified that this entitled Catchings to participate in the Program. AF No. 9.3. Moreover, Mathews admits that Catchings was approved to participate in the Program. *Id.*

There is no dispute that Catchings's room was occupied the entire time he was registered at the Hotel. AF No. 9.4. Catchings's guest folio indicates that his stay lasted until January 18, 2006, and Mathews believes it was until February 2006. AF No. 9.5.

### F. Mathews's Employment History at the Hotel

In the summer of 2005, Mathews began her employment as a front desk clerk

at the Hotel. AF No. 10.1. In this position, Mathews was primarily responsible for checking guests in and out of the Hotel. AF No. 10.2.

Mathews had no responsibility for guest billing, sending invoices, or any of the other financial operations of the Hotel. AF No. 10.3. Moreover, for the most part, Mathews has no personal knowledge regarding Corporate Lodging's operation of the Program, the Hotel's participation in the Program, or the Hotel's communications with Corporate Lodging. AF No. 10.4. However, Mathews does recall observing a letter that was prepared by Mines for Brooks and Hughes for FEMA to pay for their rooms.[6] Mathews's employment at the Hotel ended in early February 2006. AF No. 10.5.

## IV.   ANALYSIS

### A.   FCA

Decatur moves for summary judgment on Mathews's FCA claim on the basis that she is unable to support a *prima facie* case. As recognized in *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301 (11th Cir. 2002), a *prima facie* case under the FCA requires proof of the following elements:

> (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.

---

[6] *See* Doc. #25 at 2-3 ¶ 10.

*See Clausen*, 290 F.3d at 1311 n.19 (citing *United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 803 (8th Cir. 2001)).

"[T]he term 'knowingly' means that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or the falsity of the information." *See, e.g., U.S. ex rel. Hefner v. Hackensack University Medical Center*, No. Civ. A. 01CV4078DMC, 2005 WL 3542471, at *9 (D.N.J. Dec. 23, 2005) (citing 31 U.S.C. § 3729(b) (1994)). Congress amended the knowingly component to a FCA claim in 1986 to clarify that liability should attach not only when persons have specific knowledge of falsity, but also when persons avoid or disregard the facts relating to a claim. *See Hackensack*, 2005 WL 3542471, at *9 ("No proof of specific intent is required."). However, at the same time, "[i]nnocent mistakes or negligence are not actionable under this section." *See Hackensack*, 2005 WL 3542471, at *5 (citing *Hindo v. University of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 613 (7th Cir. 1995)).

Mathews premises her FCA claim on Decatur's alleged improper submissions for reimbursement under the Program pertaining to four (4) groups of Hotel guests. The court addresses each one in turn below.

### 1. Herbert Derkins and Family

Regarding the Herbert Derkins Family, Mathews alleges in her complaint that "[i]n December 2005, FEMA secured other housing for these families who moved out, yet the hotel continued to bill and collect money based upon their staying at the hotel." (Doc. #1 ¶ 19). However, Mathews testified during her deposition that she does not actually know when the Herbert Derkins Family moved out of the Hotel and is only able to confirm that they began moving out in December 2005. (Doc. #22 at Mathews Depo. at 36). Further, testimony from Wallace and Mines substantiates that the Derkins Family occupied two (2) rooms in the Hotel during the entire time that they were there until January 19, 2006. (Doc. #22 at Wallace Depo. at 71-72, 77-78; *id.* at Mines Depo. at 42).

Therefore, no material factual dispute exists regarding the record on the Herbert Derkins Family's stay at the Hotel. Accordingly, Mathews cannot establish the submission of a false or fraudulent claim and/or the requisite element of knowledge under the FCA against Decatur relating to reimbursement for the Herbert Derkins Family under the Program.

### 2. Irvin Catchings

Mathews's FCA claim relating to Catchings is also premised upon paragraph 19 of her complaint. Mathews does not dispute that Catchings was eligible to stay

at the Hotel. Instead, Mathews maintains that Catchings improperly subleased his Hotel room from December 2005 to February 2006. However, Mathews has no personal knowledge of this sublease and offers no admissible evidence to support it.[7]

Therefore, no material factual dispute exists as to the record on Catchings's stay at the Hotel. Accordingly, Mathews cannot establish the submission of a false or fraudulent claim and/or the requisite element of knowledge under the FCA against Decatur relating to reimbursement for Catchings.

### 3. DeMarcus Hughes and Temple Brooks

Mathews's FCA claim relating to Hughes and Brooks is premised upon her belief that neither Hughes nor Brooks should have been able to benefit from the Program because of their status as Virginia College students. However, Mathews's

---

[7] As Decatur correctly points out, Mathews's reliance upon what Catchings told her about the sublease is inadmissible hearsay. (*See* Doc. #22 at 12); *see also* Fed. R. Evid.801(c) ("**Hearsay.** 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Fed R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress.") (emphasis added). Further, a nonmovant, in carrying her burden to oppose a properly supported motion for summary judgment, must adduce sufficient admissible evidence of a triable issue. *See* Fed. R. Civ. P. 56(e)(2) ("***Opposing Party's Obligation to Respond.*** When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.") (emphasis by underlining added).

personal objection to and dissatisfaction over Hughes's and Brooks's eligibility to participate in the Program, despite their lack of personal displacement from the storms, does not translate into a knowing submission of a false claim by Decatur.

As Decatur points out, it is undisputed that (1) Hughes and Brooks "were from areas affected by Hurricane Katrina as defined by their zip codes[;]" (2) eligibility to participate in the Program was determined by either a zip code or a FEMA number; (3) Decatur was without the power to control eligibility under the Program and instead its role was limited to running a guest through the established verification process; (4) the reduced room rate applicable to Hughes and Brooks excluded several other amenities applicable to other guests; (5) the room rate paid under the Program was unilaterally set by FEMA; and (6) Hughes and Brooks "physically occupied their rooms" during their stay under the Program.  (*See* Doc. #22 at 13-14).

In opposing summary judgment, Mathews offers no admissible evidence to refute these material facts.  For example, Mathews has not shown through admissible evidence that, under the Program, Hotel employees <u>could, should or must exercise discretion</u> and deny eligibility to guests who otherwise would qualify, based upon other criteria set by the Hotel (*i.e.*, no personal displacement caused by the hurricanes).  The sole evidence that Mathews does offer relating to these guests --- her recollection of a letter prepared by Mines for Brooks and Hughes to have FEMA

pay for their rooms --- lacks a level of context and sufficiency to create any material factual dispute over Decatur's conduct as constituting a false claim.[8]

Therefore, no material factual dispute exists as to Hughes's and Brooks's stays at the Hotel. Accordingly, Mathews cannot establish the submission of a false or fraudulent claim and/or the requisite element of knowledge under the FCA against Decatur relating to reimbursement for either Hughes or Brooks under the Program.

**B.   Unjust Enrichment**

Decatur also moves for summary judgment on Mathews's claim of unjust enrichment. In asserting this theory, it is undisputed that Mathews is not seeking restitution from Decatur for something which she claims it holds that rightfully belongs to her. (*See* Doc. #22 at Mathews Depo. at 11-12 (stating that allegations in complaint "didn't cost [her] any money" and agreeing that she is not making any claim that Decatur "was unjustly enriched at [her] personal expense")).

Instead, Mathews contends that the case of *Scrushy v. Tucker*, 955 So. 2d 988 (Ala. 2006), makes it clear that she has a right to pursue an unjust enrichment claim

---

[8] The court notes that, when asked during her deposition if Mines recalled "if Ms. Wallace ever prepared" or "anyone ever . . . prepared a letter saying that [Hughes] had been impacted by the storm" or if she recalled "ever preparing or asking anyone to prepare any letter saying that any person had been impacted by the storm and had been staying at the hotel[,]" she answered, "Not to my knowledge, no." and "No." respectively. (Doc. #22 at Mines Depo. at 22-23). Further, no copy of the letter that Mathews complains of has been submitted to the court.

against Decatur even if she has suffered no personal loss by its actions. (Doc. #25 at 13-14). The court disagrees.

In describing unjust enrichment, the *Scrushy* court quotes from the earlier case of *Avis Rent A Car Systems, Inc. v. Heilman*, 876 So.2d 1111 (Ala. 2003):

> "To prevail on a claim of unjust enrichment, the plaintiff must show that the '"defendant holds money which, *in equity and good conscience*, belongs to the plaintiff **or** holds money which was improperly paid to defendant because of *mistake or fraud*."' *Dickinson v. Cosmos Broad. Co.*, 782 So. 2d 260, 266 (Ala. 2000) (quoting *Hancock-Hazlett Gen. Constr. Co. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala. 1986)) (some emphasis omitted; some emphasis added). 'The doctrine of unjust enrichment is an old *equitable* remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.' *Battles v. Atchison*, 545 So.2d 814, 815 (Ala. Civ. App. 1989) (emphasis added).
>
> "'[T]he remedy of *restitution* is designed to remedy the detrimental effects caused by unjust enrichment.' *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So.2d 1345, 1351 (Ala.1991). 'A claim for restitution is equitable in nature, and permits a trial court to *balance the equities* and to take into account *competing principles* to determine if the defendant was unjustly enriched.' *United Coastal Indus., Inc. v. Clearheart Constr. Co.*, 71 Conn. App. 506, 513, 802 A.2d 901, 906 (2002) (emphasis added). Consequently, '"[t]he success of a claim for unjust enrichment depends on the particular facts and circumstances of each case."' *DJ Painting, Inc. v. Baraw Enters., Inc.*, 172 Vt. 239, 245, 776 A.2d 413, 419 (2001) (quoting *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184, 531 A.2d 887, 889 (1987))."

*Scrushy*, 955 So. 2d at 1011 (quoting *Avis,* 876 So. 2d at 1122-23) (emphasis in bold added). In advancing her position, Mathews seizes upon the Supreme Court of

Alabama's use of the word "or" (as emphasized in bold above). (Doc. #25 at 14). Mathews maintains that the second part of that description means, a plaintiff, such as her, who although admittedly without any personal injury traceable to the defendant's actions, can still alternatively maintain an unjust enrichment claim by showing that a defendant "holds money which was improperly paid to defendant because of mistake or fraud."

For several reasons, the court is not persuaded by Mathews strained reading of this language in *Scrushy*. A study of the internally cited case of *Dickinson v. Cosmos Broad. Co.*, 782 So. 2d 260, 266 (Ala. 2000) explains the entire context of this unjust enrichment standard and necessarily implies that the payment by mistake or fraud must be made <u>by the plaintiff</u> for the claim to be viable. As explained in *Dickinson*:

> The candidates' third claim is for "<u>money had and received</u>." This is essentially a derivative claim of fraud. The candidates assert that the <u>defendant stations overcharged them and are therefore in possession of money that is not rightfully theirs</u>.
>
> "The essence of the theories of unjust enrichment or money had and received is that a plaintiff can prove facts showing that defendant holds money which, in equity and good conscience, belongs to plaintiff or holds money which was <u>improperly paid to defendant because of mistake or fraud</u>."
>
> *Hancock-Hazlett Gen. Constr. Co. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986) (citing *Foshee v. General Tel. Co. of the Southeast*, 295 Ala. 70, 322 So. 2d 715 (1975); *Wash v. Hunt*, 281 Ala. 368, 202 So. 2d 730 (1967)).

*Dickinson*, 782 So. 2d at 266 (emphasis added). Therefore, under the circumstances of *Dickinson*, the opinion clarifies that whether proceeding under an unjust enrichment or money had and received theory, there must be some type of equitable injury that the plaintiff has allegedly suffered, whether by means of an improper retention or overcharge of money by the defendant.

Additionally, the Supreme Court of Alabama's reasoning in *Hancock-Hazlett General Const. Co., Inc. v. Trane Co.*, 499 So.2d 1385 (Ala. 1986) leaves no doubt that Mathews's unjust enrichment claim cannot proceed as a matter of law:

> Here, plaintiff's complaint affirmatively discloses that defendants do not hold any amount of money paid to them by mistake or otherwise. Quite the contrary, Trane retained only the sum of money actually owed to it by McCullough, and returned the overpayment to McCullough. Obviously, then, Trane has not been "unjustly enriched," as a matter of law, by retaining any money; <u>it does not have in its possession any money belonging to Hancock</u>. Trane retained only money covering the price of equipment it furnished McCullough.

*Hancock*, 499 So. 2d at 1387 (emphasis added). Similar to *Hancock*, it is undisputed here that Decatur "does not have in its possession any money belonging to [Mathews]."

Moreover, while Mathews insists that Alabama law recognizes a claim for unjust enrichment even when the prosecuting plaintiff lacks a demonstrable personal injury, she fails to cite to any controlling cases that have expressly permitted that type

of claim to proceed, nor has this court been able to independently locate any such precedential authority.

Further, Mathews's untenable position regarding unjust enrichment is at odds with fundamental constitutional jurisdictional principles.[9] More specifically, because Mathews cannot show any cognizable injury personal to her that stems from unjust enrichment, she lacks any standing to pursue such a claim against Decatur. Finally, for the reasons stated in the section of this opinion relating to Mathews's FCA claims, Mathews has failed to show a genuine issue of material fact that any monies paid to Decatur by anyone were "improperly paid . . . because of mistake or fraud." Accordingly, for all these reasons, summary judgment in favor of Decatur as to

---

[9]As the Eleventh Circuit explained individualized constitutional standing in *Sierra Club v. Tennessee Valley Authority*, 430 F.3d 1337(11th Cir. 2005):

> The basics are familiar. An individual plaintiff has standing under the Constitution's case-or-controversy limitation, Art. III, § 2, where "(1) [the plaintiff] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

*Sierra Club*, 430 F.3d at 1344.

Mathews's unjust enrichment claim is also appropriate.

## V. CONCLUSION

Therefore, Decatur has met its burden on summary judgment of demonstrating the absence of any material factual dispute and entitlement to judgment as a matter of law as to all of Mathews's claims. A separate order dismissing this case with prejudice will issue.

**DONE** and **ORDERED** this 21st day of August, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge